# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| **ELEANOR BURKS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  5:17-cv-00834-MHH** |
| | } | |
| **HUNTSVILLE CITY BOARD OF EDUCATION, et al.,** | } } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

This action concerns an employment dispute.  Plaintiff Eleanor Burks taught as a tenured teacher at Martin Luther King, Jr. Elementary School in Huntsville, Alabama.  Her teaching career ended in 2015 when the Huntsville City Board of Education voted to terminate her employment.  Ms. Burks contends that the termination was unconstitutional retaliation by nine individuals who Ms. Burks has sued in their individual capacities:  Eugene Wardynski, former Superintendent of Huntsville City Schools; Jennifer Douthit, former principal of Martin Luther King, Jr. Elementary School; Elisa Ferrell, Laurie McCaulley, Mary Beth Wilder, and Walker McGinnis, current and former members of the Huntsville City Board of Education; Sarah Spear, former guidance counselor at Martin Luther King, Jr. Elementary; Lisa Thorington, former instructional partner for Martin Luther King,

Jr. Elementary; and Catherine Vasile, former Director of Instruction for the Huntsville Board of Education. (Doc. 32, pp. 2–4, ¶¶ 3–12). The Board of Education and members of the board have moved for summary judgment, (Doc. 48), as have the other individual defendants, (Doc. 52). For the reasons explained below, the Court will enter summary judgment for the defendants.

## I. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). When considering a summary judgment motion, the Court must view the evidence in the record and draw reasonable inferences in the light most favorable to the non-moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). Accordingly, the Court views the evidence in this case in the light most favorable to Ms. Burks.

## II. FACTUAL BACKGROUND

In September of 1987, the Huntsville City Board of Education hired Ms. Burks as a fourth-grade teacher at Colonial Hills Elementary School. (Doc. 49-1, p. 30). The name of the school eventually changed to Martin Luther King, Jr. Elementary School. (Doc. 49-1, p. 30). Ms. Burks worked as a teacher at Colonial Hills/MLK from 1987 until August of 2015. Early in her teaching career, Ms. Burks joined the Alabama Education Association. (Doc. 64-1, p. 3, ¶ 4).

By all accounts, Ms. Burks had a productive career at Martin Luther King, Jr. Elementary School for more than three decades. Ms. Burks was a tenured teacher, served as interim principal of the school in 2011, and, according to co-workers and administrators, was "a wealth of knowledge." (Doc. 64-1, p. 1, ¶ 8; Doc. 64-1, p. 3, ¶ 6).

In May of 2014, for the first time, the school administered a standardized test called the "ACT Aspire Test." (Doc. 64-1, p. 4, ¶ 10). Ms. Burks proctored the exam, and per exam instructions, she "walked around [her] classroom, monitor[ed] the exam, and ensur[ed] that the students wrote in the correct place." (Doc. 64-1, p. 4, ¶ 10; Doc. 71, p. 7). During the writing portion of the exam, Ms. Burks noticed that a student was writing on a topic that was different from the other students. Ms. Burks "concluded that the student had not read the prompt correctly" and told the student "to read the prompt and address it." (Doc. 71, p. 7; Doc. 64-1, p. 4, ¶ 10).

When the student asked if he "needed to erase" what he already had written, Ms. Burks responded "you may want to." (Doc. 71, p. 7; Doc. 64-1, p. 4, ¶ 10). Ms. Burks's conduct violated the "test security policy" for the ACT Aspire test and invalidated every test taken by the students in Ms. Burks's room. (Doc. 49-28, p. 11).

Because of the testing violation, on May 22, 2014, Ms. Douthit issued to Ms. Burks a written reprimand. (Doc. 49-28, pp. 9–10). On July 14, 2014, after learning of the testing violation and reviewing Ms. Burks's disciplinary record, Dr. Wardynski issued to Ms. Burks a notice informing her "that, at a meeting of the Huntsville City Board of Education which will be held . . . on the 24th of July, 2014 at 3:30 pm, [he] intend[ed] to recommend to the School Board [Ms. Burks's] suspension without pay for 15 work days . . . ." (Doc. 49-41, pp. 8–9). The notice informed Ms. Burks that at the July 24 meeting, she would "have the opportunity to present evidence and argument either in person or in writing to the Huntsville school board with respect to the proposed action." (Doc. 49-41, pp. 8–9).

The July 24 suspension hearing was "not a full adversarial hearing involving cross examination of witnesses." (Doc. 49-12, p. 69). According to the procedures used by Ms. McCaulley, the presiding board member:

> [T]he Superintendent or his designee will present the evidence and argument establishing the reasons for his proposal to suspend Eleanor

Burks. There will be no cross examination of the Superintendent or his designee, although the members of the Board may choose to ask questions. After Ms. Burks has heard the Superintendent's evidence and argument, she will have an opportunity to present evidence and argument regarding the reasons why she believes she should not be suspended. There will be no cross examination of Ms. Burks or her designee. No witnesses will be sworn.

(Doc. 49-12, p. 69).[1]    After hearing the evidence, the Board approved Dr. Wardysnki's recommendation to suspend Ms. Burks for 15 days without pay. (Doc. 49-29, p. 4).

On August 1, 2014, Ms. Burks filed in Madison County Circuit Court a petition for a common law writ of certiorari and a request for a temporary restraining order and preliminary injunction (*Burks I*). (Doc. 49-1, pp. 125-29). In her state court petition, Ms. Burks named as respondents the Huntsville Board of Education, the Board's members in their official capacities, and the Board's Superintendent, Dr. Casey Wardynski. (Doc. 49-1, pp. 125–26). Ms. Burks asked the state court to enjoin the respondents from suspending her or withholding her salary. (Doc. 49-1, pp. 128–29). In the state petition Ms. Burks alleged that (1) her suspension was not supported by "lawful evidence;" (2) the procedures used at the suspension hearing violated Alabama's Students First Act; (3) the procedures used at the suspension

---

[1] The procedures used during the July 24 suspension hearing were based on "sample scripts" provided to Ms. McCaulley by the Alabama Association of School Boards. (Doc. 49-11, p. 10, tpp. 34–35).

hearing violated the United States and Alabama Constitutions; and (4) the Board lacked subject matter jurisdiction to suspend Ms. Burks. (Doc. 49-1, p. 127).

On November 12, 2014, the Madison County Circuit Court granted the defendants' motion for summary judgment in *Burks I*. (Doc. 49-1, p. 150). Ms. Burks appealed to the Alabama Court of Civil Appeals. (Doc. 49-1, pp. 176–79). The Court of Civil Appeals affirmed the judgment of the Madison County Circuit Court. (Doc. 49-2, p. 71).

On March 31, 2015, the Board's Compliance Director, Shirley Wellington, sent an e-mail to Dr. Wardynski, Director of Instruction Cathy Vasile, and Deputy Superintendent Barbara Cooper informing them that the State Department of Education had set a certificate revocation hearing for Eleanor Burks on September 9, 2015. (Doc. 49-36, pp. 11–13; Doc. 49-5, pp. 72–73). On May 21, 2015, Dr. Wardynski signed, and had delivered to Ms. Burks, a written notice that he was proposing the termination of her employment. (Doc. 49-4, pp. 62–67). In response, on June 5, 2015, Ms. Burks submitted a written request for a hearing before the Board. (Doc. 49-2, pp. 67–68). The requested hearing took place on August 12, 2015. (Doc. 49-29, pp. 31–34). At the close of the evidence, the Board adopted Dr. Wardynski's recommendation of termination. (Doc. 49-26, p. 111, tpp. 433–36).

## III.  ANALYSIS

Ms. Burks asserts claims against the defendants under 42 U.S.C. § 1983.  Ms. Burks alleges that the defendants violated her First Amendment rights to petition and free association, violated her Fourteenth Amendment right to due process, and conspired to violate her First and Fourteenth Amendment rights.  In response, the defendants assert the affirmative defense of qualified immunity.  The availability of this defense is a question of law.  *Bates v. Harvey*, 518 F.3d 1233, 1239 (11th Cir. 2008).

Qualified immunity protects public employees "from suit in their individual capacities for discretionary actions performed in the course of their duties."  *Carter v. Butts Cty., Ga.*, 821 F.3d 1310, 1318 (11th Cir. 2016).  "'Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 733 (11th Cir. 2010) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)) (internal quotation marks omitted).

To establish the defense, a defendant must demonstrate that she "was acting within the scope of [her] discretionary authority."  *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009).  If that showing is made, then "[t]he burden then shifts to the plaintiff to overcome the defense of qualified immunity."  *Case*, 555 F.3d at 1325;

*see also Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) ("[T]he burden shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity") (emphasis in *Holloman*).  To carry this burden, the plaintiff must demonstrate that the defendant "'violated clearly established law based upon objective standards.'" *Gonzalez v. Lee Cty. Hous. Auth.*, 161 F.3d 1290, 1295 (11th Cir. 1998) (quoting *Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir. 1997)).

Here, it is undisputed that the defendants were acting within the scope of their discretionary authority when they terminated Ms. Burks's employment.  (Doc. 71, p. 49).  Therefore, Ms. Burks must establish that the defendants are not entitled to qualified immunity by showing that the evidence "make[s] out a violation of a constitutional right and that the constitutional right was clearly established at the time" of the alleged violation.  *Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016) (citations omitted).

## A. First Amendment

Ms. Burks argues that the defendants violated her rights of free speech and expression under the First Amendment when they retaliated against her for filing her state writ petition concerning her 15-day suspension.  Ms. Burks posits that "there is a broadly held princip[le] established that lawsuits . . . are protected by the First Amendment."  (Doc. 71, p. 50).

Ms. Burks was a public employee when she filed her state action. The First Amendment protects a public employee's speech only if the employee spoke as a citizen on "a matter of public concern." *Moss v. City of Pembroke Pines*, 782 F.3d 613, 617–18 (11th Cir. 2015). "[S]peech involves a matter of public concern if it can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1319 (11th Cir. 2005) (quoting *Connick v. Myers*, 461 U.S. 138, 147–48 & n.7 (1983)). To determine whether speech pertains to a matter of public concern such that the First Amendment protects the speech, a district court must consider the "content, form, and context" of the communication. *Cf. Connick v. Myers*, 461 U.S. 138, 147–48 (1983).

Thus, to prove that the defendants violated a clearly established First Amendment right so as to avoid the defense of qualified immunity, Ms. Burks must demonstrate that *Burks I* addressed a matter of public concern. On the record before the Court, she has not done so.

*Burks I* concerned Ms. Burks's 15-day suspension. In her state court petition, Ms. Burks asked the Madison County Circuit Court to temporarily enjoin the Board from suspending or terminating her employment or withholding her pay. (Doc. 49-1, pp. 128–29). Employment actions of this nature do not concern the public:

> A petition that "involves nothing more than a complaint about a change in the employee's own duties" does not relate to a matter of public concern. *United States v. Treasury Employees*, 513 U.S. 454, 466 (1995). The right of a public employee under the Petition Clause is a right to participate as a citizen . . . in the democratic process. It is not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts.

*Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 399 (2011). Thus, the content of Ms. Burks's state court petition does not involve a matter of public concern. As Ms. Burks concedes, her state court petition "asks for an injunction, a remedy solely for [Ms. Burks's] benefit[.]" (Doc. 71, p. 35).

Ms. Burks characterizes the state court proceeding as a matter of public concern because "she chose to continue litigating the common law writ of certiorari claim even after serving her suspension . . . because she wanted to help change the law for other teachers." (Doc. 71, p. 35; *see also* Doc. 69-1, p. 4, ¶ 14). Because "[a]n employee's speech will rarely be entirely public or entirely private," a district court examining the content of the speech must ask "whether the purpose of [the plaintiff's petition] was to raise issues of public concern . . . or to further her own private interests." *Morgan v. Ford*, 6 F.3d 750, 754–55 (11th Cir. 1993); *Boyce v. Andrew*, 510 F.3d 1333, 1344 (11th Cir. 2007) ("[T]he relevant inquiry is not whether the public would be interested in the topic of the speech at issue but rather is whether the purpose of [the plaintiff's petition] was to raise issues of public concern.") (quotations and citations omitted).

In her state action, Ms. Burks requested no relief that would confer on other teachers anything other than an incidental benefit. (Doc. 49-1, pp. 125–29). Ms. Burks did allege that her "constitutional rights were aggravated by the failure to provide an avenue for review for suspensions under 20 days in the Students First Act." (Doc. 49-1, p. 127, ¶ 19) (citations omitted). She also alleged statutory and constitutional violations with respect to several procedural aspects of the Board's July 24, 2014 hearing on her proposed suspension. (Doc. 49-1, p. 127, ¶¶ 16-18). But she did not seek a declaration that the Students First Act was unconstitutional or otherwise invalid, and she did not allege generally that Alabama's procedures for the suspension of tenured teachers is unconstitutional. She challenged only the procedures used in her hearing before the Board, and she asked only to have her administrative hearing set aside, her suspension enjoined, and her pay restored. (Doc. 49-1, pp. 128–29). Though the testing violation that triggered the events that culminated in Ms. Burks's state court lawsuit was a matter of public concern, Ms. Burks's state action concerned only her personal employment relationship with the Huntsville City School Board. Moreover, Ms. Burks's representation by an AEA-appointed attorney in the state court action did not convert her individual employment dispute into a matter of public concern.[2]

---

[2] To the extent that the AEA's involvement in Ms. Burks's defense constitutes political activity, the First Amendment rights to association and speech are governed by the same general legal

"The forum in which a petition is lodged will be relevant to the determination of whether the petition relates to a matter of public concern[,]" *Guarnieri*, 564 U.S. at 398 (citing *Snyder v. Phelps*, 562 U.S. 443, 454–455 (2011)), but a lawsuit is not entitled to more protection than other forms of First Amendment conduct, *see Guarnieri*, 564 U.S. at 399. The state forum sheds little light on the public concern inquiry.

Therefore, even if Ms. Burks could prove that the Board terminated her in retaliation for her state court challenge to her suspension, she would not be able to establish a violation of a clearly established First Amendment right to overcome the defendants' assertion of qualified immunity.

## B. Fourteenth Amendment

Ms. Burks also argues that the Board violated her due process rights. In the Eleventh Circuit, "a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003) (citing *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)). "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the

---

framework and lead to the same result. *D'Angelo v. Sch. Bd. of Polk City*, 497 F.3d 1203, 1212 (11th Cir. 2007).

employer's evidence, and an opportunity to present his side of the story" before termination. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

Here, Ms. Burks acknowledges that she received written notice of the charges against her; she had an opportunity to hear the Board's evidence at her suspension hearing; and she had the opportunity to present witnesses, evidence, and argument at her suspension hearing. (Doc. 71, pp. 28–30). "[Sh]e thus received a pre-termination hearing and, with it, all the process due under *Loudermill*." *McKinney v. Pate*, 20 F.3d 1550, 1561–62 (11th Cir. 1994).

Ms. Burks argues that the defendants violated her due process rights because they demonstrated bias towards her during the suspension hearing. "A demonstration that the [Board] was biased, however, is not tantamount to a demonstration that there has been a denial of due process." *McKinney*, 20 F.3d at 1562. In employment cases, "[a]ll that due process requires . . . is a post-deprivation 'means of redress for property deprivations satisfy[ing] the requirements of procedural due process.'" *McKinney*, 20 F.3d at 1563 (quoting *Parratt v. Taylor*, 451 U.S. 527, 543 (1981)) (second alteration in *McKinney*). As a result, Ms. Burks's due process claim depends on whether, assuming bias by the Board, Alabama law "provide[s] a means to correct any error resulting from the bias . . . ." *McKinney*, 20 F.3d at 1563.

Ms. Burks argues that the Students First Act does not provide an adequate remedy because review of the Board's decision is based on the factual record before the Board. (Doc. 71). But a state's remedial process "need not provide all relief available under Section 1983; as long as the remedy 'could have fully compensated the [claimant] for the property loss [s]he suffered,' the remedy satisfies procedural due process." *McKinney*, 20 F.3d at 1564 (citing *Parratt*, 451 U.S. at 544). "Inherent in [the] power to review is the power to remedy deficiencies and to cure violations of due process." *McKinney*, 20 F.3d at 1563.

Here, the Students First Act provided to Ms. Burks at least two layers of review of a Board decision. First, Ms. Burks had the right to appeal to a neutral hearing officer any adverse decision by the Board. Ala. Code § 16-24C-6(e).[3] Second, if a hearing officer had upheld the Board's initial decision, then Ms. Burks would have had the right to appeal to the Alabama Court of Civil Appeals. Ala. Code § 16-24C-6(f). This procedure is adequate. *See Cotton v. Jackson*, 216 F.3d 1328, 1333 (11th Cir. 2000) (concluding that mandamus relief was an adequate remedy to "ensure that [employee of a public college] was not deprived of his due process rights").

---

[3] "The hearing officer assigned to review appeals . . . shall be selected from a panel of neutrals comprised of five retired Alabama judges . . . whose names appear on an official alternative dispute resolution roster maintained by the Alabama Bar Association." Ala. Code § 16-24C-6(g). The hearing officer must to give "[d]eference . . . to the decision of the employer." Ala. Code § 16-24C-6(e).

Thus, Ms. Burks has not established a violation of a clearly established Fourteenth Amendment right to overcome the defendants' assertion of qualified immunity.

## C. Federal Conspiracy

Ms. Burks argues that defendants conspired to terminate her in retaliation for exercising her First Amendment rights to free speech and association. (Doc. 32, pp. 14–16, 22–24). A plaintiff alleging a § 1983 conspiracy to violate constitutional rights "must show that the parties 'reached an understanding' to deny the plaintiff his or her rights. The conspiratorial acts must impinge on the federal right; the plaintiff must prove an actionable wrong to support the conspiracy." *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010) (quoting *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990)).

Because Ms. Burks has not established a violation of the First or Fourteenth Amendments, she cannot "prove an actionable wrong to support the conspiracy." Thus, the defendants are entitled to summary judgment on Ms. Burks's § 1983 conspiracy claims.

## D. State Law Claims

In her second amended complaint, Ms. Burks asserts that defendants Vasile, Spear, Thortington, Douthit, and Wardynski tortiously interfered with, and

conspired to tortiously interfere with, her employment contract. (Doc. 32, pp. 33–35).  The defendants argue that because they are not "strangers" to Ms. Burks's employment contract with the Board, they cannot be liable for interfering with that relationship under Alabama law. (Doc. 53, pp. 25–26).[4]  Ms. Burks did not respond to this argument in her opposition brief.  As a result, she has abandoned her state law claims.

An issue is abandoned if a plaintiff raises it in the complaint and then fails to argue it in response to a motion for summary judgment. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001).  It is an "unremarkable proposition that assertions made in the pleadings . . . but not made in opposition to a motion for summary judgment[] need not be considered . . . in ruling on the motion for summary judgment." *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 182 F.3d 888, 892 (11th Cir. 1999).  Thus, the defendants are entitled to summary judgment on Ms. Burks's state law claims.[5]

---

[4] Under Alabama law, the elements of a tortious interference claim are "(1) the existence of a protectable business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damages." *White Sands Group, LLC v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009).

[5] Even if Ms. Burks had not abandoned them, the Court would decline to exercise jurisdiction over the interference and state law conspiracy claims.  Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a state-law claim if the court "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  "Actually determining whether to dismiss the claims calls for the court to weigh the 'host of factors' outlined in *Gibbs* and *Cohill*: 'judicial economy, convenience, fairness, and comity.'" *Ameritox, Ltd. v. Millennium Labs, Inc.*, 803 F.3d 518, 532 (11th Cir. 2015) (quoting *City of Chicago v. Int'l Coll. of Surgeons*,

## IV.  CONCLUSION

Based on the foregoing, the Court grants the defendants' motions for summary

judgment.  (Docs. 48, 52).  The Court will enter a separate order closing the case.

**DONE** and **ORDERED** this March 13, 2020.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

522 U.S. 156, 173 (1997)).  Here, the Court has dismissed all claims over which it has original jurisdiction, and the Court concludes that the *Ameritox* factors would favor dismissing Ms. Burks's remaining state-law claims on the basis of fairness because those claims lack merit.